FRAUDULENT CONVEYANCE.

---

SEALS & UPHAM *vs.* JOHN CASHIN, LEON P. DUGAS, THE MECHAN-
ICS' BANK, THE AUGUSTA INSURANCE & BANKING COMPANY, and
THE PRESIDENT, DIRECTORS & CO. OF THE BANK OF AUGUSTA.

*Bill for Discovery, Relief, &c.*

1. Under the laws of Georgia, a mortgage is a mere *incumbrance,* to pay a debt.

2. It is neither an assignment in trust, nor a conveyance, or transfer, under the Act of 1818.

3. The Act of 1818, therefore, does not affect mortgages, at all.

This bill states, that the complainants have obtained their judg-
ment, against one of the defendants, John Cashin, and have issued a
fi. fa. thereon, and that the Sheriff has made a return of Nulla Bona
thereon—that one of the defendants, John Cashin, was largely in-
debted to the Banks, defendants, to the amount of insolvency ; and
the other defendant, L. P. Dugas, was the accommodation indorser
of said John Cashin, on sundry notes in said Banks—that whilst the
complainants were carrying their case to judgment, and shortly be-
fore their judgment was obtained, the said John Cashin, to secure his
said indorser from future loss, and shortly before their judgment was
obtained, made and executed a *mortgage of certain real and personal*
property, to said Dugas, and the same was placed on record, a few
days before the said judgment was obtained. And the complainants
further state, that said mortgage was made, to secure the payment of
a *pre-existing debt,* and Cashin was at that time *insolvent,* and, by
said mortgage, gave a fraudulent preference, *to a portion of his*
creditors. And the bill prays, that this mortgage may be declared
fraudulent and void, and the said mortgaged property may be decreed
to be sold, and the complainants' demands be satisfied out of such sale.

To this bill, the defendants filed a general demurrer, for want of
Equity.

On the part of complainants, it is contended that this mortgage is

[Seals & al. *vs.* Cashin & al.]

fraudulent and void, as against other creditors, and comes within the provisions of the Act of the Legislature, passed in 1818. That said Act provides, "That any person, or persons, unable to pay his, her, " or their debts, who shall, at any time hereafter, make any assign- " ment, or transfer, of real or personal property, stock in trade, debts, " dues, or demands, in trust, to any person or persons, in satisfaction " or payment of any debt or demand, or in part thereof, for the use " and benefit of his, her, or their creditor or creditors, or for the use " and benefit of any other person or persons, by which any creditor " of said debtor shall or may be excluded, from an equal share or por- " tion of the estate, so assigned or transferred; such assignment, " transfer, deed, or conveyance, shall be null and void, and consider- " ed, in Law and Equity, as fraudulent against creditors." And the proviso in this Act declares that " any person may sell all or any of " his property, bona fide, *provided* there be no trust reserved for the " seller, or any person appointed by him."

For the complainants, it is further contended, that the giving a mortgage, to secure one creditor, is within the mischief, intended to be remedied by the Act before stated—that a mortgage is an assign- ment in trust, to pay one or more creditors, and by which a creditor or creditors is excluded, from an equal share or portion of the estate so assigned or transferred; and that this mortgage is therefore fraudu- lent and void under said Act. And in support of this definition of the Law, the counsel for complainants refer to a written decision, made by Judge Montgomery, in this Court, in the case of The Bank of the State of Georgia *vs.* The Bank of Augusta. In that case, the Judge says, " with regard to the pre-existing debts, were the fact admitted, " I would hold a mortgage to be a transfer in *trust*—a mortgagee " being a trustee in Equity—the only Court which notices trusts. " Our Statutes point out the mode of foreclosing mortgages, but does " not alter the relation in which the mortgagor and mortgagee stand, " towards each other."

On the part of the defendants, it is contended, that the defendant, John Cashin, had a right to prefer one creditor to another, at common law; and might have secured his creditor, by mortgage or sale, as he might think proper. That a mortgage is neither an assignment, or transfer; nor is a mortgagee, under the Laws of Georgia, a trustee

for the mortgagor; and that a mortgage is not within the provisions of the Act of 1818.

In the decision of this question, the Court must look into the old law, for the mischief, and the remedy. And further, this being a Statute in derogation of rights, secured by the common law, must be construed strictly. What, then, were the rights of the debtor, at common law? Why, that he might prefer one creditor to another; and this he may do, by transfer, or assignment, of any, or all his property to his creditors, for the payment of such creditors, as he might choose to name; and in that transfer, create these creditors trustees, and create a trust fund to pay such as he should designate, as was the case, prior to the Act of 1818; and such conveyances, or transfers, are now on record, in the County of Richmond, made by mercantile firms, to secure certain classes of their creditors. And these cases come strictly within the words of the Act of 1818; and which, no doubt, caused the passage of the Act :—They were, strictly, assignments, or transfers, in trust, to pay certain creditors, in exclusion of other creditors; and, thus far, the common law right in such transfers, or assignments, have been taken away by the Act of 1818. The next subject to be examined, is, what weight ought the expression of an opinion, made by Judge Montgomery, upon a case where the facts were not in evidence before him, and therefore not called on to declare an opinion as to the Law—is such an opinion to be considered as a decision of *this question* ? And which question is one of great importance to the people, as in its consequences it would nearly render the Law of mortgage void. But, as the Judge intimated what opinion he would have given, had the facts been in proof before him, I feel it my duty, from the respect which I feel for the memory of that Judge, to assign my reasons for coming to a different conclusion, from the same facts.

First : Is a mortgage an assignment, or transfer, so as to operate as a satisfaction, or payment, of a debt, or any part thereof? A transfer, in legal contemplation, means, the absolute conveyance of such interest, as the party has in the thing transferred, so that the party, to whom transferred, will have the perfect control, so as to make sale of the same.

In the second place, what is an assignment ? This is a conveyance

[Seals & al, *vs.* Cashin & al.]

of all the right and title, which a party who makes the transfer, in the thing transferred, owned or possessed.

In the third place, what is a mortgage? "Mortgage may be de-" fined to be (2 *Atk.* 435) a debt, by specialty, secured by pledge of " lands, of which the legal ownership is vested in the creditor, but of " which, in Equity, the debtor, and those claiming under him, remain " the actual owners, until debarred, by judicial sentence, or their " own laches." This is the definition of a mortgage, as it is at common law; and as soon as the mortgagor failed to pay the debt, secured by the mortgage, on the day it became due, he forfeited his right to redeem, and the mortgagee had a right to enter, and hold the estate, as the absolute owner: But, in process of time, Courts of Equity, seeing the injustice and oppression, exercised by mortgagees, began to exercise their authority; and finally assumed jurisdiction over mortgages, and considered, and so decreed, that the mortgagee should be held a trustee for the mortgagor; and that, after forfeiture at Law, yet, in Equity, it would still be considered the property of the mortgagor, and let him in to redeem, provided he made the application in that Court, within a reasonable time; and they held the mortgagee to be a trustee for the mortgagor, and compelled him to account for the rents and profits received by him, in discharging the debt and interest; and therefore, Judge Montgomery was right, when speaking of mortgagees *being trustees*, and holding the mortgage estate in trust, to pay their own debt.

But this Court is not now deciding on mortgages at common law: It is to decide what is the force and effect of a mortgage, under the Laws of Georgia, so far as the legal estate, remaining in the mortgagor, whether the condition be forfeited, or not. The first Act was passed in 1768, in relation to recording mortgages and other deeds. It declares, that nothing in the Act shall be construed to bar any widow of any mortgagor of lands and tenements, from her dower, and right in and to the said lands and tenements; unless she should relinquish the same. The statutory provision, which alters the entire relation, which existed at common Law, and which prescribes the mode in which mortgagees are to *obtain their money*, is as follows: By the Act of 1799, (*Prince D.* 423,) when the term of payment, stated in the mortgage, has passed, the mortgagee must apply to the

Superior Court, in case of land, and obtain a Rule Nisi, for the mortgagor to pay the money into Court, by a time stated in the rule ; and if he fail to do so, the Court is then to give judgment, for the amount due on the mortgage, and order the mortgaged property sold, as in cases of execution, and the proceeds to be paid to the mortgagee, or his attorney. But when there shall be a surplus, it shall be paid over to the mortgagor, or his agent.

From the foregoing statutory provisions, can it be contended, that a mortgagee stands in the situation of a trustee to the mortgagor ? Or must a Court of Equity now be applied to, in order to protect the mortgagor's rights of redemption ? Or can it now be said, that a mortgagee has the right to take possession of the mortgaged property, and hold the same, until the mortgagor shall file his bill in Equity, to be allowed to redeem the same ? I apprehend no such right would now be considered as existing, in the mortgagee. If so, I apprehend that a mortgage, in this State, will be defined to be, an *incumbrance, created upon either real or personal property, to secure the payment of a debt, either due by specialty, or simple contract ;* and this incumbrance may, and must be enforced, at Law, as prescribed by our Statute. And this mode of enforcing this incumbrance is very similar to other common law proceedings, in obtaining judgment, in other cases of contract. And the same proceedings are to be had, in both instances, to wit : that the property must be sold by the Sheriff, and after paying off the plaintiff's demand, if there be a surplus, this is to be paid to the mortgagor, or his agent. Or, in case of judgment and fi. fa. the surplus is to be returned to the defendant. From the foregoing history of mortgages, both at common law and under the provisions of our Statutes, it is evident, that Judge Montgomery, in his intimation of an opinion, had reference, solely, to mortgages in England, where a mortgagee is considered a trustee for the mortgagor : for the plain reason, that, at Law, the mortgagor cannot have the power to redeem, and must go into a Court of Equity, where it is considered as a trust estate. But as our Statutes have entirely altered the rights of mortgagor and mortgagee, and the proceedings must be had at Law, and that Law giving the mortgagor all the rights, which he could claim, in Equity, in England ; the mortgagee has not the power, now, to seize the lands, and collect the rents and profits, and thereby make himself a trustee. The Sheriff is now

[Seals & al. *vs.* Cashin & al.]

the only person, who can take possession of the lands, and not then, until after a foreclosure, and fi. fa. to sell. And, at that sale, the mortgagee has no greater rights, than any other person has at Sheriff's sales.

I am satisfied that a mortgage, under the Laws of Georgia, is not a conveyance in trust, but is an incumbrance created to pay a debt.

Secondly : That a mortgage is not an assignment in trust, to pay debts, or any part thereof.

Thirdly : Nor is a mortgage a transfer of property, in satisfaction of a debt. It only creates a lien on the property, from its date, securing the payment of the debt, and does not operate as a payment, until foreclosure and sale.

This Court, for the reasons before assigned, does decide, that mortgages are not within the provisions of the Act of 1818 ; and the grounds, taken by the complainants, were, that this mortgage, made by Cashin, one of the defendants, is within the provisions of said Act, and therefore void, as against his other creditors : and this Court having decided that this mortgage is not within the provisions of said Act, it is therefore ordered that the demurrer in this case be, and is hereby, sustained, and the bill dismissed.